**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In the Matter of the Application of<br><br>IOAN MICULA,<br><br><br>VIOREL MICULA,<br><br><br><br>S.C. EUROPEAN FOOD S.A.,<br>S.C. STARMILL S.R.L and<br><br>S.C. MULTIPACK S.R.L,<br><br>     *Petitioners*,<br><br>vs.<br><br>THE GOVERNMENT OF ROMANIA,<br><br>     *Respondent*. | Civil Action No. 17 CV 2332 |

<u>**MEMORANDUM OF LAW TO SHOW CAUSE AS TO WHY ROMANIA AND
ITS COUNSEL SHOULD NOT BE SANCTIONED**</u>

## TABLE OF CONTENTS

INTRODUCTION.................................................................................................................... 1

ARGUMENT ......................................................................................................................... 2

    I.    **SANCTIONS ARE NOT WARRANTED IN THIS CASE GIVEN THAT
ROMANIA'S POSITION ON THE PROCESS OF SERVICE IS NOT CONTRARY
TO THE EVIDENCE.** ................................................................................................. 2

    **A.   SANCTIONS STANDARD.** ..................................................................... 2

    **B.   ROMANIA AND ITS COUNSEL'S STATEMENTS WERE NOT IN BAD
FAITH AND DO NOT RISE TO THE LEVEL OF SANCTIONS.**................................. 4

CONCLUSION ...................................................................................................................... 6

## <u>TABLE OF AUTHORITIES</u>

**Rules**

Fed. R. Civ. P. 12(b)(5)…………………………………………………………………………1

Fed. R. Civ. P. 11(c)(1)…………………………………………………………………….2, 4

Fed. R. Civ. P. 11(c)(1)(B)…………………………………………………………………….2

**Case Law**

*Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 767(4th Cir. 2003)……………………..3

*Methode Elecs., Inc. v. Adam Techs., Inc.*, 371 F.3d 923, 927 (7th Cir. 2004)…………………3

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 57 (2d Cir. 2000)…………….3

*Thornton v. General Motors Corp.*, 136 F.3d 450, 455 (5th Cir. 1998)…………………………3

*Link v. Wabash R. Co.*, 370 U.S. 626, 630–631, 82 S. Ct. 1386, 8 L.Ed.2d 734 (1962)…………3

*Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186, 197 L. Ed. 2d 585 (2017)……..3

*Mine Workers v. Bagwell*, 512 U.S. 821, 826–830, 114 S. Ct. 2552, 129 L.Ed.2d 642 (1994)…..3

*Azamar v. Stern*, 275 F.R.D. 1, 4 (D.D.C. 2011)……………………………………………....4

*Jordan v. U.S. Dep't of Labor*, 273 F. Supp. 3d 214, 241 (D.D.C. 2017)……………………..…4

*Alexander v. F.B.I.*, 192 F.R.D. 25, 31 (D.D.C. 2000)………………………………………....4

*Lucas v. Duncan*, 574 F.3d 772, 775 (D.C. Cir. 2009)………………………………………...4

**Treaties**

Hague Service Convention, Nov. 15 1965, Article 10(a)……………………………….…..1, 5

**Other**

*Art. 8, Para. 1 of Government Ordinance No. 27/2001*…………………………………….……6

Respondent, the Government of Romania ("Romania") and its counsel, Rock Fusco & Connelly and Ioana Salajanu, respectfully submit this Memorandum of Law to Show Cause why they should not be sanctioned for the asserted argument that "Romania has never authorized service by alternative means as envisaged by Articles 10(a)" in Romania's Rule 12(b)(5) Motion to Dismiss (ECF Dkt. No. 11, at p. 2).  In support, Romania and its counsel state as follows:

## INTRODUCTION

Romania's statement that it has "never authorized service by alternative means as envisaged by Articles 10(a)" is an accurate statement of the current law, policy, and practice of the Romanian government.  In support of this Memorandum, the Minister of Justice clarifies that Articles 10(a) mail service pertains to entities and individuals, not for sovereign states.  *See* a true and accurate copy of a letter from the Romanian Minister of Justice directed to the Minister of Finance, English and Romanian translation, attached hereto as Exhibit A.  Therefore, when Romania answered the 2008 Questionnaire, it was answering in the affirmative for private entities and individuals, not for the Romanian state as a sovereign.  The Questionnaires do not distinguish between sovereign states or private individuals and entities.  Romania adheres to the Hague Service Convention. However, the Romanian Minister of Foreign Affairs has placed the United States, on notice, via a verbal note, through diplomatic channels, of the procedural requirements by which Romania, as a sovereign government, should be served.  *See* a true and accurate copy of the verbal note issued by Romania to the Ministry of Foreign Affairs (a/k/a United States Department of State) Protocol Department  (a/k/a Office of the Protocol) attached hereto as Exhibit B.  The verbal note identifies Romania's official position that service of process by foreign entities on Romania, as a sovereign entity, must occur in all cases through diplomatic channels.  *See Id.* at paragraph 1. Given this, the evidence supports Romania's position that in order for it, as a sovereign state, and

not as a corporate entity or individual, to be properly served, Petitioners  Ioan Micula ("Ioan"), Viorel Micula ("Viorel"), S.C. European Food S.S ("EF"), S.C. Starmill S.R.L ("Starmill") and S.C. Multipack S.R.L. ("Multipack," and collectively with Ioan, Viorel, EF and Starmill, hereinafter "Micula"), need to effectuate service only through diplomatic means.  The service of process should have been transmitted to the United States Embassy which is the proper diplomatic channel to forward the pleadings to the Central Authority in order for it to effectuate service on Romania, as a sovereign entity.  Given this, neither Romania, nor its counsel, should be sanctioned for the position submitted to the Court.

## **ARGUMENT**

I.     **SANCTIONS ARE NOT WARRANTED IN THIS CASE GIVEN THAT ROMANIA'S POSITION ON THE PROCESS OF SERVICE IS NOT CONTRARY TO THE EVIDENCE**.

Sanctions against Romania and its counsel are not warranted in this case given that Romania's position on the service by mail is not contrary to the evidence.  Neither Romania nor its counsel made a statement that was made in bad faith or with the intent to delay the proceedings. Romania's statements were not incorrect nor contrary to the evidence. Romania and its counsel submitted arguments consistent with the current process in place for service of the Romanian Government.  The fact that Romania did not attach a legal opinion or prior declarations to support its Motion was a result of the restrictions in obtaining documents of this nature from a government entity.

### A.  SANCTIONS STANDARD.

A court may impose Rule 11 sanctions on its own initiative.  *See* Fed. R. Civ. P. 11(c)(1). The court must give a party or attorney notice and an opportunity to be heard before imposing sanctions. Moreover, pursuant to Fed. R. Civ. P. 11(c)(1)(B), two procedural requirements apply

2

when the court initiates the process. First, the court must issue a "show cause" order to the party

or attorney who is exposed to sanctions.  *See Bass v. E.I. DuPont de Nemours & Co*., 324 F.3d

761, 767(4th Cir. 2003) (vacating sanctions award where court did not issue order to show

cause); *Methode Elecs., Inc. v. Adam Techs., Inc*., 371 F.3d 923, 927 (7th Cir. 2004); *Baffa v.*

*Donaldson, Lufkin & Jenrette Sec. Corp*., 222 F.3d 52, 57 (2d Cir. 2000). Second, the show cause

order, like a party's sanctions motion, must describe the specific conduct that appears to violate

Rule 11(b). *Thornton v. General Motors Corp*., 136 F.3d 450, 455 (5th Cir. 1998); (citing

Sanctions Under Federal Rule of Civil Procedure 11).

Federal courts possess certain "inherent powers," not conferred by rule or statute, "to

manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link*

*v. Wabash R. Co.,* 370 U.S. 626, 630–631, 82 S. Ct. 1386, 8 L.Ed.2d 734 (1962). That authority

includes "the ability to fashion an appropriate sanction for conduct which abuses the judicial

process." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186, 197 L. Ed. 2d 585

(2017). The Supreme Court has made clear that such a sanction, when imposed pursuant to civil

procedures, must be compensatory rather than punitive in nature. *Id.  See also Mine Workers v.*

*Bagwell,* 512 U.S. 821, 826–830, 114 S. Ct. 2552, 129 L.Ed.2d 642 (1994) (distinguishing

compensatory from punitive sanctions and specifying the procedures needed to impose each

kind). In other words, the fee award may go no further than to redress the wronged party "for losses

sustained"; it may not impose an additional amount as punishment for the sanctioned party's

misbehavior. *Id.*

A court has broad discretion to assess sanctions—including that of dismissal or default

judgment—for conduct that has "severely hampered the other party's ability to present his case,"

for conduct that has placed "an intolerable burden ... by requiring the court to modify its own

3

docket and operations in order to accommodate the delay," and for conduct that is "disrespectful to the Court and to deter similar misconduct in the future." *Azamar v. Stern*, 275 F.R.D. 1, 4 (D.D.C. 2011).

In deciding on a Rule 11 motion, courts consider (1) whether each presenting attorney "conducted a reasonable inquiry," (2) whether each presenting attorney "determined that [the] papers filed with the court are well grounded in fact [and] legally tenable," and (3) whether the papers were "interposed for any improper purpose." This Court has "discretion to determine both whether a Rule 11 violation has occurred and what sanctions should be imposed if there has been a violation." Under Rule 11(c)(1), if a rule has been violated, the court may impose sanctions on "any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). "The sanction should be imposed on the persons—whether attorneys ... or parties—who have violated the rule or may be determined to be responsible for the violation." *Jordan v. U.S. Dep't of Labor*, 273 F. Supp. 3d 214, 241 (D.D.C. 2017).

The court may use its inherent power to monitor litigation closely and to sanction litigants for abusive practices. But, before awarding sanctions, the court must make an explicit finding that counsel acted in bad faith. A party demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of the court order. *Alexander v. F.B.I.,* 192 F.R.D. 25, 31 (D.D.C. 2000). Note also that when the trial court imposes sanctions *sua sponte*, the reviewing court should engage in "careful appellate review" to assess whether there was an abuse of discretion. *Lucas v. Duncan*, 574 F.3d 772, 775 (D.C. Cir. 2009).

### B.  ROMANIA AND ITS COUNSEL'S STATEMENTS WERE NOT IN BAD FAITH AND DO NOT RISE TO THE LEVEL OF SANCTIONS.

Sanctions against Romania and its counsel are not warranted in this case given that neither Romania nor its counsel made a statement that was made in bad faith or with the intent to delay

the proceedings.  Moreover, Romania's statements are not contrary to the evidence outlined by this Court.

Romania's statement that it has "never authorized service by alternative means as envisaged by Articles 10(a)" is not contrary to the evidence. The Minister of Justice clarifies that Articles 10(a) mail service pertains to entities and individuals, not for sovereign states.  *See* Exhibit A.   Therefore, when Romania answered the 2008 Questionnaire, it was answering in the affirmative for private entities and individuals, not for the Romanian state as a sovereign.  The Questionnaires identified in the Court's May 22, 2018 ruling denying Romania's Motion, do not distinguish between sovereign states or private individuals and entities.

Romania adheres to the Hague Service Convention. However, there are specific procedural requirements to which one must adhere when serving Romania. Romanian Minister of Foreign Affairs has placed the United States, on notice, via a verbal note, through diplomatic channels, of the procedural requirements by which Romania, as a sovereign government, should be served.  *See* Exhibit B.  The verbal note identifies Romania's official position that service of process by foreign entities on Romania, as a sovereign entity, must occur in all cases through diplomatic channels. *See Id.* at paragraph 1.   Given this, the evidence is not to the contrary, but supports Romania's position that in order for it, as a sovereign state, and not as a corporate entity or individual, to be properly served, Micula needs to effectuate service only through diplomatic means.  The service of process should have been transmitted to the United States Embassy which is the proper diplomatic channel to forward the pleadings to the Central Authority in order for it to effectuate service on Romania, as a sovereign entity.  Given this, Romania, nor its counsel, should be sanctioned for the position submitted to the Court.

5

The fact that Romania, nor its counsel, did not attach affidavits or was not an intention of bad faith or an intent to delay, but as a result of limitations in obtaining documents from a sovereign entity. Within the response time frames as required by the Court, usually less than 7 days, over the weekends and or including holidays, Romania was not easily able to obtain such documentation.

According to Art. 8, Para. 1 of Government Ordinance No. 27/2001 on issuing answers to petitions, the public authorities and institution have the obligation to reply the petitioner their answer within 30 days from the registration date of the petition, irrespective of the positive or negative solution. *See* a true and accurate copy of communication from legal counsel in Romania attached hereto as Exhibit C. Moreover, despite the lack of affidavits, the statements made by Romania in its Motion were not incorrect as indicated above

## CONCLUSION

Ultimately, Romania's statement that it has "never authorized service by alternative means as envisaged by Articles 10(a)" is not contrary to the evidence. Romania adheres to the Hague Service Convention yet has particular procedures when serving it as a sovereign state. Romania placed the United States on notice, that Romania, as a sovereign entity, must occur in all cases through diplomatic channels. Given this, the evidence is not to the contrary, but supports Romania's position that in order for it, as a sovereign state, and not as a corporate entity or individual, to be properly served, Micula needs to effectuate service only through diplomatic means. Given this, neither Romania, nor its counsel, should be sanctioned for the position submitted to the Court, as these statements were not made in bad faith or with an intent to delay.

WHEREFORE, Romania respectfully requests that this Court not enter any sanctions against it or its counsel, and any other relief that this Court deems fit.

Dated:  May 30, 2018                          Respectfully submitted,

                                              THE GOVERNMENT OF ROMANIA

                                              By:____/s/ Ioana Salajanu_____
                                                        One of Its Attorneys


Rock Fusco & Connelly, LLC
321 N. Clark Street, Suite 2200
Chicago, Illinois 60654
Telephone: (312) 494-1000
Facsimile: (312) 494-1001
isalajanu@rfclaw.com

*Attorneys for Defendant*
*Government of Romania*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned, an attorney, certifies that a copy of the foregoing document was served on all counsel of record via the Court's ECF/CM system on May 30, 2018.

                                              By:____/s/ Ioana Salajanu_____