**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

In the Matter of the Application of

IOAN MICULA,


VIOREL MICULA,


S.C. EUROPEAN FOOD S.A.,
S.C. STARMILL S.R.L and

S.C. MULTIPACK S.R.L
                 Petitioners


     - against –

THE GOVERNMENT OF ROMANIA,


       Respondent.

   Civil Action No. 17 CV 2332

**GOVERNMENT OF ROMANIA'S MEMORANDUM IN SUPPORT OF MOTION TO RECONSIDER ORDER GRANTING OF ATTORNEYS' FEES ON MOTION TO COMPEL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 60(B) OR, IN THE ALTERNATIVE, OBJECTION TO BILL OF COSTS**

## TABLE OF CONTENTS

| Title | Page |
|---|---|
| I.   PROCEDURAL BACKGROUND………………………………………… | 1 |
| II.   PRELIMINARY STATEMENT | 2 |
| III.  LEGAL STANDARDS …………………………………………… | 3 |
| A.   Motion to Reconsider…………………………………………………... | 3 |
| B.   Awarding Attorneys' Fees…………………………………………… | 4 |
| C.   Reasonableness of Attorneys' Fees ……………………………….. | 5 |
| D.   Hours Expended…………………………………………….. | 6 |
| E.   Non-Productive and Overlapping Billing Is Grossly Excessive ………… | 7 |
| IV.  ARGUMENT …………………………………………………. | 8 |
| A.   This Court Erred In Awarding Attorneys' Fees Following Its Granting of the Motion to Compel Because It Failed To Apply the Standards Required Under The Existing Law……………………………………………….. | 8 |
| I.   This Court Failed to Undertake the Requisite Fact-Intensive Analysis When It Determined that Romania was Not Substantially Justified in Maintaining Its Position as Required by Fed. R. Civ. P. 37(a)(5) and Relevant Case Law…………………………………………… | 8 |
| B.   In the Alternative, Even if the Court Does Not Reconsider and Vacate the Attorneys' Fees Award in Its Entirety, The Attorneys' Fees Sought in the Bill of Costs are Unreasonable and Should be Substantially Reduced………………………………………………………….. | 11 |
| I.   Petitioners Fail to Meet Their Burden of Providing Satisfactory Evidence of Their Attorneys' Skill and Reputation, Prevailing Market Rates or the Reasonableness of The Rates They Seek in Their Bill of Costs… | 11 |
| II.   The Hours Expended By Petitioners' Counsel Are Excessive, Overlapping and Vaguely Described and Are, Therefore, Unreasonable and Not Subject to Recoupment ………………….. | 13 |
| A.  Counsel's Inefficient, Overlapping Billing is Grossly Excessive | 14 |
| B.  Billing As to Meet And Confer is Not Recoupable | 17 |

## TABLE OF AUTHORITIES

**Cases**                                                                                       **Page**

*Blum v. Stenson*, 465 U.S. 886 (1984) .............................................................................6

*Covington v. District of Columbia*, 57 F.3d 1101 (D.C. Cir. 1995), *cert. denied* 516 U.S.
    1115 (1996).............................................................................................................5

*Eley v. District of Columbia*, 793 F.3d 97 (D.C. Cir. 2015)...............................................6

*Estate of Klieman v. Palestinian Auth.*, 82 F. Supp. 3d 237 (D.D.C. 2015) ....................3

*Gates v. Syrian Arab Republic*, 646 F. Supp. 2d 79 (D.D.C. 2009)..................................3

*Godoy v. New River Pizza, Inc.*, 565 F. Supp. 2d 1345, 1348 (S.D. Fla. 2008) ...............6

*Hensley v. Eckerhard*, 461 U.S. 424 (1983) ..................................................................6-7

*In re North*, 59 F.3d 184 (D.C. Cir. 1995) ........................................................................5

*Joaquin v. Friendship Pub. Charter Sch.*, 188 F. Supp. 3d 1 (D.D.C. 2016)....................6

*Kister v. District of Columbia*, 229 F.R.D. 326 (D.D.C. 2005)........................................7

*Maddow v. Procter & Gamble Co.*, 107 F.3d 846 (11th Cir.1997)....................................5

*Miller v. Holzmann*, 575 F. Supp. 2d 2, 18 n.29 (D.D.C. 2008) .....................................12

*Neumont v. Florida*, 610 F.3d 1249 (11th Cir. 2010)...................................................5-10

*Nevada West Petroleum, LLC v. BP West Coast Prod., LLC*, No. 215CV01684APGPAL,
    2017 WL 1822574 (D. Nev. May 5, 2017) .......................................7-8, 14, 17

*Oklahoma Aerotronics, Inc. v. United States*, 943 F.2d 1344 (D.C. Cir. 1991).............8

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546 (1986).............7

*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010) .............................................7-8

*Pierce v. Underwood*, 487 U.S. 552 (1988) ............................................................5-10

*Prunty v. Vivendi*, 195 F. Supp. 3d 107 (D.D.C. 2016)......................................6, 11-12

*Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980) ......................................................4

*Salazar v. District of Columbia*, 809 F.3d 58 (D.C. Cir. 2015)........................................6

*Shatsky v. Syrian Arab Republic*, 312 F.R.D. 219 (D.D.C. 2015)....................................4

*Smalls v. United States*, 471 F.3d 186 (D.C. Cir. 2006)...................................................4

*Smith v. Roher*, 954 F. Supp. 359 (D.D.C. 1997) ............................................................6

*Tequila Centinela, S.A. de C.V. v. Bacardi & Co. Ltd.*, 248 F.R.D. 64 (D.D.C. 2008) ........ 6-8, 14

**Legislation**                                                                                          **Page**

Fed. R. Civ. P. 37................................................................................................2, 4, 5, 8, 10

Fed. R. Civ. P. 54.........................................................................................................3

Fed. R. Civ. P. 59.........................................................................................................3

Fed. R. Civ. P. 60.........................................................................................................3

**GOVERNMENT OF ROMANIA'S MEMORANDUM IN SUPPORT OF MOTION TO RECONSIDER ORDER GRANTING OF ATTORNEYS' FEES ON MOTION TO COMPEL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 60(B) OR, IN THE ALTERNATIVE, OBJECTION TO BILL OF COSTS**

PLEASE TAKE NOTICE that the Government of Romania ("Romania"), by its undersigned counsel, submits its Memorandum in Support of Motion to Reconsider Order Granting of Attorneys' Fees on Motion to Compel Pursuant to Federal Rule of Civil Procedure 60(B) or, in the Alternative, Objection to Bill of Costs (the "Motion"), pursuant to existing case law, stating as follows:

**PROCEDURAL BACKGROUND**

1.     On October 1, 2019, Petitioners served post-judgment interrogatories to Romania. (ECF No. 98-3).[1]

2.     On October 30, 2019, Romania responded to the Interrogatories, setting forth various objections and, without waiving said objections, also providing certain answers to the Interrogatories.

3.     On December 2, 2019, Petitioners filed their Motion to Compel, which also requested fees and costs. (ECF No. 98).

4.     Romania filed its opposition to the Motion to Compel on December 16, 2019 asserting that the Award has been paid. (ECF No. 104). Petitioners filed their reply in support of their Motion to Compel on December 23, 2019. (ECF No. 107). Romania filed a Motion for Leave to File Sur-Reply In Opposition To Petitioners' Motion to Compel ("Motion for Sur-Reply") on December 30, 2019 seeking to submit the evidence of the payments made by Romania to Petitioners satisfying the Award. (ECF No. 110). Petitioners filed an opposition to the Motion

---

[1]    The cited ECF docket number corresponds to Petitioners having attached their post-judgment interrogatories as an exhibit to their Motion to Compel (ECF No. 98).

for Sur-Reply on January 14, 2020. (ECF No. 112). Romania filed a reply in support of its Motion

for Sur-Reply on January 21, 2020. (ECF No. 117).

5.      This Court did not rule on the Motion for Leave to File Sur-Reply before issuing

its ruling on the Motion to Compel.

6.      On March 11, 2019, this Court granted the Motion to Compel and, in doing so,

awarded "attorney's fees and costs associated with preparing Petitioners' Motion to Compel and

any reply thereto." (ECF No. 133, citing Fed. R. Civ. P. 37(a)(5)). The Court further directed

Petitioners to submit a bill of costs by March 16, 2020. *Id.*

## PRELIMINARY STATEMENT

The Court's Order imposing attorneys' fees against Romania for its failure to have provided

the information that Petitioners requested in their Post-Judgment Interrogatories was improvidently

entered, and should be reconsidered and vacated, because Romania was substantially justified in

resisting this discovery. Romania presented clear facts in its objections and responses to the Post-

Judgment Interrogatories (and reiterated those facts in its Opposition to Petitioners' Motion to

Compel) supporting its argument that the Judgment should be voided in light of Romania having

satisfied the Award in accordance with the amounts determined to be owed by the BCA Ruling, the

Final Mazilu Report and Updated Mazilu Report. This Court did not engage in any fact-intensive

determination before deciding to award attorneys' fees to Petitioners per their Motion to Compel.

The very fact that Petitioners disagreed with Romania's position as to the import of the BCA

Decision and the effect of the payment of the Award per that Decision, itself created a "genuine

dispute" as to whether Romania was obligated to provide the information requested in the Post-

Judgment Interrogatories, about which "reasonable people could differ." Moreover, Romania,

citing the Restatement (Second) of Conflicts and this Court's own language from the September

11, 2019 Memorandum Opinion, was indeed "substantially justified" in objecting to the

2

Interrogatories, not providing the requested information and in opposing the Motion to Compel, for it believed (and still believes) in good faith that legal authorities supported its position.

In the alternative to Romania's Motion to Reconsider, if this Court disagrees with Romania's position that its Order awarding attorneys' fees and costs should be reconsidered and then vacated, Romania objects to the amount and type of fees Petitioners seek in their Bill for Costs, as well as the hourly rates Petitioners' counsel has charged for their time. These amounts and rates are unwarranted, unsubstantiated and excessive, and should be reduced to an amount no larger than $5,000.00.

## LEGAL STANDARDS

### A.  Motion to Reconsider.

The Federal Rules of Civil Procedure do not specifically address motions for reconsideration. *Estate of Klieman v. Palestinian Auth.*, 82 F. Supp. 3d 237, 241-42 (D.D.C. 2015). However, the Rules provide three pathways for those seeking reconsideration of judicial  decisions. Rule 54(b) permits reconsideration of interlocutory judgments. Fed. R. Civ. P. 54(b). Rule 59(e) permits a party to seek reconsideration of a final judgment within 28 days of that judgment. Fed. R. Civ. P. 59(e). Rule 60 permits a party to seek reconsideration of a final judgment either (a) to correct a mistake arising from an oversight or omission or (b) to seek relief from a judgment or order due to: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or other misconduct; (4) void judgment; (5) satisfied, released, or discharged judgment; or (6) "any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(a), (b); *see also Gates v. Syrian Arab Republic*, 646 F. Supp. 2d 79, 83 (D.D.C. 2009). A motion based in Rule 60(b)(6) must be filed "within a reasonable time" after the judgment at issue. Fed. R. Civ. P. 60(b).

Rule 60(b) "was intended to preserve the delicate balance between the sanctity of final judgments and the incessant command of the court's conscience that justice be done in light of all the facts." *Smalls v. United States*, 471 F.3d 186, 191 (D.C. Cir. 2006).

**B.  Awarding Attorneys' Fees.**

"[D]istrict court judges enjoy wide discretion in managing the discovery process." *Shatsky v. Syrian Arab Republic*, 312 F.R.D. 219, 223 (D.D.C. 2015) (quotation marks omitted). And, of course, authorized sanctions under Rule 37 include ordering the payment of attorneys' fees and expenses. *Id.*

However, the U.S. Supreme Court has held that "[b]ecause inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764, 100 S.Ct. 2455 (1980).

Rule 37(a) of the Federal Rules of Civil Procedure provides, in pertinent part:

(5)    *Payment of Expenses; Protective Orders. . . .*

(A)    *If the Motion Is Granted (or Disclosure or Discovery Is Provided After Filing).* If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:

(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;

(ii) the opposing party's nondisclosure, response, or objection was substantially justified; or

(iii) other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a). According to the Advisory Committee Notes for Rule 37, "the present provision of Rule 37(a) that the court shall require payment if it finds that the defeated party acted without 'substantial justification' may appear adequate, but in fact it has been little used. Only a

4

handful of reported cases include an award of expenses, and the Columbia Survey found that in only one instance out of about 50 motions decided under Rule 37(a) did the court award expenses. *See* Fed. R. Civ. P. 37, Advisory Comm. Notes (1970 Amendments).[2]

The mandated award of expenses under Rule 37(a) involves *a fact-intensive determination* of whether the losing party was "substantially justified" in maintaining its position and whether the expenses and attorney's fees requested by the prevailing party are 'reasonable'." *Id*. (emphasis added).

In *Pierce v. Underwood*, 487 U.S. 552 (1988), the U.S. Supreme Court held that the "substantially justified" standard is satisfied where there is a "genuine dispute" or where "'reasonable people could differ as to [the appropriateness of the contested action].'" *Id.* at 565 (quoting Fed. R. Civ. P. 37(a), Advisory Comm. Note (1970 Amendments)). The *Pierce* court also ruled that "substantially justified" does not mean "justified to a high degree," but only "justified in substance or in the main – that is, justified to a degree that could satisfy a reasonable person." *Id.*; *see also Maddow v. Procter & Gamble Co.*, 107 F.3d 846, 853 (11th Cir. 1997) (party was "substantially justified" in opposing motion to compel production where it believed case law supported its position). This language is the prevailing standard for "substantial justification." *See Neumont v. Florida*, 610 F.3d 1249, 1253 (11th Cir. 2010) (*per curiam*) (objections are substantially justified when "reasonable people could differ as to the appropriateness of the contested action").

## C. Reasonableness of Attorneys' Fees.

The [movant] has the burden of establishing the reasonableness of any fee requests. *In re North*, 59 F.3d 184, 189 (D.C. Cir. 1995); *Covington v. District of Columbia*, 57 F.3d 1101, 1107

---

[2]   This contradicts Petitioners' representation in their motion to compel that "[t]his court routinely awards attorney's fees and costs to the moving party pursuant to Rule 37." (ECF No. 98, p. 8)

(D.C. Cir. 1995) ("[A] fee applicant bears the burden of establishing entitlement to an award, documenting the appropriate hours, and justifying the reasonableness of the rates."). "An award of attorneys' fees is calculated by multiplying a reasonable hourly rate by the number of hours reasonably expended on the case." *Smith  v. Roher*, 954 F. Supp. 359, 364 (D.D.C. 1997) (*citing Hensley v. Eckerhard*, 461 U.S. 424, 433 (1983)); *Blum v. Stenson*, 465 U.S. 886, 888 (1984).

To establish an attorney's "reasonable hourly rate," a party must show evidence of three distinct elements: (1) the attorney's billing practices; (2) the attorney's skills, experience, and reputation; and (3) the prevailing market rates in the relevant community. *See Prunty v. Vivendi*, 195 F. Supp. 3d 107, 114 (D.D.C. 2016) *citing Salazar v. District of Columbia*, 809 F.3d 58, 62 (D.C. Cir. 2015).

In addition, it is the movant's burden "'to produce satisfactory evidence – ***in addition to her attorney's own affidavits*** – that her requested rates are in line with those prevailing in the community for similar services by lawyers of reasonable comparable skill, experience, and reputation.'" *Id. citing Eley v. District of Columbia*, 793 F.3d 97, 101 (D.C. Cir. 2015) (emphasis in original).

Most District Courts in the District of Columbia have relied on the United States Attorney's Office's Attorney's Fees Matrix (commonly referred to as the "*Laffey* Matrix"), which sets forth a table of hourly rates for attorneys of varying experience levels and paralegals/law clerks, as the "benchmark for reasonable fees." *Prunty*, 195 F. Supp. 3d at 116; *Joaquin v. Friendship Pub. Charter Sch.*, 188 F. Supp. 3d 1 (D.D.C. 2016).

**D.  Hours Expended.**

While movant is entitled to hours reasonably spent on its motion, "[i]t does not necessarily follow that 'the amount of time ***actually*** expended is the amount of time ***reasonably*** expended.'" *Tequila Centinela, S.A. de C.V. v. Bacardi & Co. Ltd.*, 248 F.R.D. 64, 70 (D.D.C. 2008) *citing*

*Kister v. District of Columbia*, 229 F.R.D. 326, 330 (D.D.C. 2005) (emphasis in original). Petitioners are "only entitled to compensation for the work that is 'useful and of a type ordinarily necessary' to secure the final result obtained from the litigation." *Id.* (*quoting Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561, 106 S.Ct. 3088 (1986)).

The Court must determine whether the number of hours expended on the litigation is reasonable. *Tequila Centinela*, 248 F.R.D. at 68-69 *citing Hensley*, 461 U.S. at 433. The causal connection between a party's violations of Rule 37 and reasonable expenses incurred by the other party is "not to be taken lightly. Rather, '[a] near 'but for' relationship must exist between the rule 37 violation and the activity for which fees and expenses are awarded.'" *Tequila Centinela*, 248 F.R.D. at 69 (citations omitted).

The time spent discussing ongoing issues such as the status of and adequacy of  discovery responses do not necessarily constitute hours "reasonably spent" on filing the motion to compel, nor do they directly arise from it. *Id.* at 69. Moreover, a court should not award payment for time entries that reflected an ***overlap between time spent on document review*** or related activities and time spent on other litigation related activities such as strategy and correspondence. *Id.* (emphasis added).

The court will also not award monetary sanctions for time spent in meet and confer sessions which are mandatory before a discovery motion may be filed, and would be required whether a not a motion was necessary. *Nevada West Petroleum, LLC v. BP West Coast Prod., LLC*, No. 215CV01684APGPAL, 2017 WL 1822574 at *4 (D. Nev. May 5, 2017).

**E.  Non-Productive and Overlapping Billing Is Grossly Excessive.**

A "reasonable fee" is a fee that is ***sufficient*** to attract an adequate supply of capable counsel for meritorious cases. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) (emphasis

added).   A Motion to Compel is a perfunctory motion. *Godoy v. New River Pizza, Inc.*, 565 F. Supp. 2d 1345, 1348 (S.D. Fla. 2008).

Parties cannot be reimbursed for nonproductive time or duplicative activities. *Tequila Centinela*, 248 F.R.D. at 71-72 (citations omitted). Moreover, the determination of how much to trim from a claim for fees is committed to the district court's discretion. *Id.* (quoting *Oklahoma Aerotronics, Inc. v. United States*, 943 F.2d 1344, 1347 (D.C. Cir. 1991) (internal quotation marks omitted)).

The Court must examine movant's individual time entries to determine whether ***each*** entry is detailed enough for this Court to determine independently whether the amount of time claimed is justified. *Id*. at 72 (emphasis added). Thereafter, the Court must assess if the hours are duplicate, hence unreasonable. *Id*.

A court also should not approve time spent among 5 separate timekeepers conferring and reviewing each other's work. *See Nevada West Petroleum, LLC*, 2017 WL 1822574 at *4.

## ARGUMENT

A. **This Court Erred In Awarding Attorneys' Fees Following Its Granting of the Motion to Compel Because It Failed To Apply the Standards Required Under The Existing Law.**

I. **This Court Failed to Undertake the Requisite Fact-Intensive Analysis When It Determined that Romania was Not Substantially Justified in Maintaining Its Position as Required by Fed. R. Civ. P. 37(a)(5) and Relevant Case Law.**

In the portion of its Order (ECF No. 133) in which the Court assessed attorneys' fees against Romania, the Court did not demonstrate that it engaged in any "fact-intensive determination" to reach its conclusion, as the case law requires. In fact, at the March 9, 2020 hearing – which was not even a hearing ***on Petitioners' motion to compel*** (indeed, in its February 13, 2020 Order, the Court specifically stated that it was "defer[ring] ruling on Petitioners'

motions," which included the motion to compel, and requested that the parties appear for a hearing in March "to discuss further proceedings in the case" (*see* ECF No. 119, p. 2)) – the Court did not discuss Romania's discovery responses, or pose questions that amounted to a fact-intensive analysis of Romania's position as outlined in its Opposition to the Motion to Compel, despite the fact that Petitioner attached Romania's discovery responses to the Motion to Compel. *See* a true and accurate copy of the March 9, 2020 Transcript attached as Exhibit A.

Romania's position was made clear in every single one of its objections and responses to the Post-Judgment Interrogatories: Because it satisfied the Award pursuant to the BCA and its corresponding Final Mazilu Report and Updated Mazilu Report, the Judgment based on the then-satisfied Award could not stand. Romania even quoted this Court's statement of the law to this effect from its September 11, 2019 Opinion granting Petitioners' Motion for Judgment on the Pleadings in its Answers to Post-Judgment (ECF No. 98-4, subparagraph (b), *citing* ECF No. 86 at p. 27):

> This Court has ruled that '§ 1650a the 'possibility that an offset might apply to the award that would make execution in the full amount improper'; *see also* Restatement (Second) of Conflict of Laws § 116 (1971). 'A judgment will not be enforced in other states if the judgment has been discharged by payment or otherwise under the local law of the state of rendition.').' *See* Memorandum Opinion dated September 11, 2019, at page 27 (ECF No. 86). Given that the Set Off has been determined to be recognized by the Romanian courts, this payment method should be applied towards the Award amount.

At the March 9, 2020 hearing, the Court did not inquire of any party about Romania's position outlined in the Answers to Interrogatories or the Motion to Compel. Instead of soliciting and then assessing the facts underlying Romania's position to determine – as it was required to do – whether Romania's position in not producing the requested information was "without substantial justification," when Romania attempted to present its argument, the Court merely repeatedly requested that Romania confirm that the Judgment amount was greater than the amount had paid in

accordance with the Bucharest Court of Appeals' decision as to the amount of the Award, and that Romania had not paid this greater Judgment amount. *See* Exhibit A p. 5:17-25, p. 6:1-25 and p. 7: 1-17. The Court did not engage in any analysis of the procedures of the BCA, the BCA Decision or the Final Mazilu Report as described in the Dana Vilaia's Declaration attached to Romania's Answers to Interrogatories, which was attached to and incorporated into Petitioners' Motion to Compel (ECF No. 98-5). It made no inquiry as to Petitioners' grounds to oppose the argument that the Judgment cannot stand *in light of its own acknowledgment in its Opinion* that "[a] judgment will not be enforced in other states *if the judgment has been discharged by payment or otherwise under the local law of the state of rendition*")." *See* ECF No. 98-4 paragraph (b) *citing* September 11, 2019 Opinion (ECF No. 86), at p. 27. Instead, without undergoing the requisite fact-intensive determination as to whether, in fact, the Award on which the Judgment was based had been discharged under the law of Romania, the state of rendition, the Court ruled in a conclusory manner that "Respondent cannot unilaterally claim the judgment to be less than it is, or satisfied, based on its own understanding of the effects of proceedings in a Romanian court. In short, Respondent's self-proclaimed insistence that it owes no more than what it has already paid does not 'substantially justify' its refusal to answer Petitioners' discovery demands." (ECF No. 133, p. 2).

*Because* Romania argued that the Award had been paid and the Judgment could not stand, *the very fact that* Petitioners disagreed with Romania's position that full payment on the Award amounted to a "satisfaction" of the Judgment rendered Romania's objections to the Interrogatories substantially justified, because there was a "genuine dispute" and "reasonable people could differ as to [the appropriateness of the refusal to provide information in response to the post-judgment discovery]." *Pierce*, 487 U.S. at 565 (quoting Fed. R. Civ. P. 37(a), Advisory Committee Note (1970 Amendments)); *Neumont*, 610 F.3d at 1253; Thus, Romania, citing the Restatement and this Court's own language from the Opinion, was indeed "substantially justified" in objecting to the

Interrogatories and in opposing the Motion to Compel, for it believed in good faith that legal authorities supported its position. *Maddow*, 107 F.3d at 853.

> **B. In the Alternative, Even if the Court Does Not Reconsider and Vacate the Attorneys' Fees Award in Its Entirety, The Attorneys' Fees Sought in the Bill of Costs are Unreasonable and Should be Substantially Reduced.**

In the alternative to Romania's motion to reconsider as aforesaid, if this Court does not agree with Romania's position that the Order awarding attorneys' fees and costs should be reconsidered and then vacated, Romania objects to the amount and type of fees Petitioners seek in their Bill for Costs. These amounts are unwarranted, unsubstantiated and excessive.

> **I.   Petitioners Fail to Meet Their Burden of Providing Satisfactory Evidence of Their Attorneys' Skill and Reputation, Prevailing Market Rates or the Reasonableness of The Rates They Seek in Their Bill of Costs.**

Petitioners seek an outrageous total amount of $44,133.70 in attorneys' fees for a mere Motion to Compel.[3] However, they offer ***no*** evidence, as they must, of the prevailing market rates in the relevant community. *See Prunty,* 195 F. Supp. 3d at 114. They also fail to meet their burden "to produce satisfactory evidence – ***in addition to [their] attorney's own affidavits*** – that [their] requested rates are in line with those prevailing in the community for similar services by lawyers of

---

[3]   <u>Meet and confer</u>. $4,057.75 in fees generated by White & Case in connection with preparing for and conducting a meet and confer teleconference with counsel for Romania on November 20, 2019 and $206.55 in fees generated by Dentons US LLP in connection with preparing for and conducting a meet and confer teleconference with counsel for Romania concerning Romania's objections to interrogatories on November 20, 2019 (ECF No. 137-1 and ECF No. 137-4, respectively). <u>Motion to Compel</u>. $10,391.00 in fees generated by White & Case in connection with preparation of the Motion to Compel, the accompanying memorandum of law, the supporting declaration of Francis Vasquez with accompanying exhibits, and the proposed order and $2,184.30 in fees generated by Dentons US LLP in connection with preparation of the Motion to Compel. *Id.* <u>Reply in Support of Motion to Compel</u>. $14,062.75 in fees generated by White & Case for the preparation of Petitioners' reply in support of its Motion to Compel and $1,194.75 in fees generated by Dentons US LLP for the preparation of Petitioners' reply in support of its Motion to Compel. *Id.* <u>Opposition to Romania's Motion for Leave to File Sur-Reply</u>. $12,036.50 in fees generated by White & Case in connection with the preparation of Petitioners' opposition to Motion for Leave to File Sur-Reply. (ECF No. 137-1).

reasonable comparable skill, experience, and reputation.' *Id*. (emphasis in original). Then, Petitioners' counsel, Hansel T. Pham (of White & Case) and Anthony Ullman (of Dentons), fail to attach to their Declarations any evidence of their or their colleagues' respective skill, experience or reputation. Hence, they fail to carry their burden of establishing that the claimed fees are reasonable.

In addition to these threshold failings, when this Court, as it has in the past, evaluates the hourly rates sought in the Bill against the *Laffey* Matrix (a copy of which is attached as Exhibit B), the Bill goes far beyond what is reasonable, justifying denial of the requested fees. *See Prunty* 195 F.Supp.3d at 115; *see also Miller v. Holzmann*, 575 F. Supp. 2d 2, 18 n.29 (D.D.C. 2008).

Mr. Pham (partner) seeks reimbursement of fees at a "reduced" rate of $675 per hour. According to his LinkedIn page, Mr. Pham has been in practice for 17 years; therefore, at most, his hourly rate per the *Laffey* Matrix should be $544.

Mr. Vasquez (partner) also seeks reimbursement of fees at a "reduced" rate of $675 per hour. According to his LinkedIn page, Mr. Vasquez has 28 years of experience; therefore, at most, his hourly rate per the *Laffey* Matrix should be $572.

Ms. Jacqueline Chung (who is described alternatively as "counsel" and "level 10+") seeks reimbursement of fees at two different "reduced" rates, $550 or $490 per hour. According to her LinkedIn page, Ms. Chung has been in practice for 12 years; therefore, at most, her hourly rate per the *Laffey* Matrix should be $491.

Laura Grai (associate) seeks reimbursement of fees at a "reduced" rate of $420 per hour. According to her LinkedIn page, Ms. Grai has been in practice for 6 years; therefore, at most, her hourly rate per the *Laffey* Matrix should be $358.

Taylor Allen (associate) seeks reimbursement of fees as a "reduced" rate of $250 per hour, below the *Laffey* Matrix for her level of experience.

Erika Murdoch (law clerk, per her LinkedIn page) seeks reimbursement of fees as a "reduced" rate of $250 per hour; however, her hourly rate per the *Laffey* Matrix should be $166.

Andrew Donoghue (legal assistant) seeks reimbursement of fees as a "reduced" rate of $170 per hour. The *Laffey* Matrix does not provide a rate for legal assistants and, without any extrinsic evidence of reasonable rates in this jurisdiction for legal assistants (and there is no such evidence in the Bill of Costs), this Court should deny any reimbursement for Mr. Donoghue's time.

Thus, this Court should, at a minimum, reduce the allowable hourly rate for the White & Case attorneys identified in the Bill of Costs to the amounts set forth above, in accordance with the *Laffey* Matrix.

With respect to Viorel Micula's counsel, Although Anthony Ullman, a partner at Dentons, executed the Declaration pertaining to Dentons' fees, he is not shown as having performed any services. With respect to J.W. Lomas and D. Morris, the two attorneys whose time entries are shown on the invoices submitted in support of the Bill of Costs, Romania's search on Denton's website and on LinkedIn for J.W. Lomas and D. Morris did not yield any results (including, troublingly, that they are even professionals associated with Dentons) and thus, it cannot be determined from the face of the Bill what the maximum hourly rate should be. Accordingly, the time for these individuals cannot be fairly assessed, and Viorel Micula has therefore failed to carry his burden on the Bill. No fees should be awarded for the Dentons time shown on the Bill.

## II.    The Hours Expended By Petitioners' Counsel Are Excessive, Overlapping and Vaguely Described and Are, Therefore, Unreasonable and Not Subject to Recoupment.

Wholly apart from the excessive hourly rates sought in the Bill (as compared against the *Laffey* Matrix) and the lack of any evidence within the Bill for the Court to evaluate market rates or the numerous attorneys' skill or experience, the number of hours expended on the various tasks identified in the invoices are plainly, and egregiously, excessive and unreasonable. As noted,

merely because the time was expended does not entitle a party to recover the claimed fees. *Tequila Centinela*, 248 F.R.D. at 70. Petitioners are "only entitled to compensation for the work that is 'useful and of a type ordinarily necessary' to secure the final result obtained from the litigation." *Id*.

### A.      Counsel's Inefficient, Overlapping Billing is Grossly Excessive.

Petitioners billing is saturated with overlapping and non-productive billing. ***Six*** different people spent time on this rather perfunctory matter, together accumulating an excessive 26.25 hours, amounting to $10,391.00, for what was a nine-page Motion to Compel. Those same six people billed 29.9 hours, charging $14,062.75, for drafting the Reply. And, perhaps most amazingly, it purportedly took two partners and an associate 24.60 hours, and $12,036.50, merely for drafting the Opposition to Romania's Motion for Sur Reply, on which this Court did not even issue a ruling. Thus, to be sure, ***all*** of the time spent on the Opposition to the Motion for Leave to File the Sur-Reply, should be stricken from the Bill, as it achieved no results at all in the case.

The *Nevada West Petroleum* court had no difficulty rejecting attorneys' fees where five separate timekeepers conferred and reviewed one another's work. *Nevada West Petroleum,* 2017 WL 1822574 at *4. This Court should likewise reject the Bill of Costs here, where six people of various levels of experience and skill worked in a clearly overlapping fashion on the same few documents. This quantity of professionals far exceeds what is ***sufficient*** to attract an adequate supply of capable counsel for meritorious cases. *Perdue*, 559 U.S. 542, 552 (2010).

1.   Review of Romania's Discovery Responses and Motion to Compel.

As an initial matter, despite the fact that Romania's objections and answers to each of the Post-Judgment Interrogatories were, with limited exceptions, identical, three people (Mr. Vazquez, Ms. Chung and Ms. Grai) billed a combined ***nine hours*** to for reviewing the Answers.[4]

Thereafter, two people (Ms. Grai and Ms. Murdoch) together spent between five (5) and eight (8) hours performing legal research,[5] which resulted in a total of nine (9) cases cited. However, several of the cases were cited for general principles that were not specific to the particular issues raised in this case.

Although only Ms. Grai billed for drafting the Motion to Compel (between 6.6 and 12.7 hours (*see* n.5 *supra* for a discussion of Ms. Grai's block billing on November 21), four other people together billed over 10 hours to review and/or revise the Motion. All this, for a nine-page discovery motion. It is plainly excessive.

2.   Reply in Support of Motion to Compel.

Similarly, three attorneys spent 22 hours combined drafting and reviewing Petitioners' Reply in Support of their Motion to Compel, a six-page document. On its face, this is beyond excessive.

---

[4]   This included Mr. Vazquez billing 1.3 hours for reviewing them on November 4 and another 2.9 hours of block billing the following week for "[a]ttention to papers for appeal and interrogatory responses; emails and conferred re same." In addition, other time entries that included reviewing the interrogatory answers also contained descriptions of other tasks, with no breakdown of the time spent on any one task.

[5]   One of Ms. Grai's entries, from November 21, 2019, contained block billing of 3.1 hours for two different tasks, research and drafting the motion to compel. Because there is no breakdown of how much time Ms. Grai spent on either of those tasks, it cannot be determined how much of that time should be attributed to the legal research. In total, however, Ms. Grai's and Ms. Murdoch's time for entries containing descriptions of "research" was 5.85 hours. In addition, back on November 4, Ms. Grai block billed 3.6 hours for, among other tasks, researching the local rules regarding meet and confer requirements, despite the fact that Petitioners' counsel had engaged in multiple meet and confer discussions with Romania's counsel throughout the life of the case. "Research" on the requirements of the local rules in this regard was wholly unnecessary.

3.   <u>Opposition to Motion for Leave to File Sur-Reply</u>.

As noted, without question, the single most egregious example of overbilling is evident from counsel's approximately 24 hours (at a cost of over $12,000) for drafting Petitioners' Opposition to Romania's Motion for Leave to File a Sur-Reply to the Motion to Compel. Apart from the fact that this Motion was clearly not central to the Motion to Compel itself or the issues raised therein, it is undeniable that Petitioners obtained no benefit from this work in the case, because the Court did not even rule on Romania's Motion prior to granting Petitioners' Motion to Compel.

4.   <u>Overly Vague Billing Descriptions</u>.

In addition to the plainly overlapping, excessive time spent by the inordinately large and unnecessary number of attorneys and clerks as aforesaid, many of the time descriptions contained in the Bill are unduly vague, preventing the Court from evaluating the time spent in any meaningful manner. Thus, Mr. Vazquez's time described as "attention to . . ." is descriptive of what work he actually performed, much less how that work was necessary or reasonable. Likewise, his time spent on "emails re interrogatories" provide no evidence that what he did was relevant or reasonable. Taylor Allen's description of "attention to various tasks relating to filing including cite check and compile WL versions of cases" on November 25 – for 3.5 hours, no less – is virtually useless beyond the two specific ministerial acts described therein. Finally, over seven (7) hours between two attorneys was billed to "finalize" the six-page Reply in support of the Motion to Compel, despite the fact that what constitutes "finaliz[ing]" the Reply is wholly unspecified. These vague, nondescript descriptions cannot be viewed as reasonable, and should be excluded from the Bill.

     5. <u>Counsel's Unilateral 50% "Discount" Where Block Billing Included Some Tasks for the Motion to Compel is Wholly Arbitrary and Unreasonable</u>.

In his Declaration, Mr. Pham describes instances where attorneys block billed for certain tasks both related and unrelated to the Motion to Compel. With no criteria whatsoever and no attempt to even dig down to determine how much time was ***actually spent*** on the tasks to which the fees sought were related, Mr. Pham merely states that "50% of the time billed for that day has been allocated to the Motion to Compel." (ECF No. 137-1 at ¶ 9). This, too, in plainly unreasonable. This Court cannot be put in a position to guess or estimate as to the amount of time counsel actually spent performing any tasks for which reimbursement is being sought. It is Petitioners' burden to demonstrate that the time spent, and the time being requested to be charged to Romania, is fair and reasonable. The unilateral "discount," based on nothing, utterly fails to comply with the prevailing standards. All fees sought for block billing that includes other unrelated matters must be ignored.

**B.**    **Billing As to Meet And Confer is Not Recoupable.**

Because the court will also not award monetary sanctions for time spent in meet and confer sessions – which are mandatory before a discovery motion may even be filed and would be required whether a not a motion was necessary – counsel's (excessive) billing totaling $4,287.25 should be excluded from the Bill. *See Nevada W. Petroleum, LLC*, 2017 WL 1822574 at 4.

WHEREFORE, The Government of Romania, and its undersigned counsel, respectfully prays that this Court enter an Order: (a) reconsidering and, after such reconsideration, vacating its award of attorneys' fees in the Order granting Petitioners' Motion to Compel; or in the alternative to vacating the attorneys' fees award altogether, (b) denying the Bill of Costs in its entirety due to the numerous fatal defects contained therein; (c) awarding fees in the amount of

$5,000 and (d) for such other and further relief this Honorable Court deems necessary, just and proper.

Dated: April 9, 2020                                                 Respectfully submitted,

                                                                     THE GOVERNMENT OF ROMANIA

                                                                     By:   */s/ Ioana Salajanu*
                                                                          Ioana Salajanu

Ioana Salajanu
7620 Kildare
Skokie, IL 60076
Telephone: (773) 875.5438
 sedeidu@yahoo.com
*Attorney for Defendant Government of Romania*

18