**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In the Matter of the Application of<br><br>IOAN MICULA,<br>VIOREL MICULA,<br>S.C. EUROPEAN FOOD S.A.,<br>S.C. STARMILL S.R.L., and<br>S.C. MULTIPACK S.R.L.,<br><br>       *Petitioners*,<br><br>  v.<br><br>THE GOVERNMENT OF ROMANIA,<br><br>       *Respondent.* | Civil Action No. 17-CV-02332-APM |

**MEMORANDUM OF LAW IN SUPPORT OF PETITIONERS'
MOTION FOR THIRD JUDGMENT ON ACCRUED
<u>SANCTIONS AGAINST ROMANIA</u>**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................................ 1

BACKGROUND ............................................................................................................................. 1

ARGUMENT.................................................................................................................................... 6

    I.     Romania Has Not Produced Any Additional Post-Judgment Discovery and the
          Court Should Enter Judgment on the Amount of Sanctions that Have Accrued
          From August 23, 2024 To Date.................................................................................... 6

CONCLUSION.................................................................................................................................. 8

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*CE Int'l Res. Holdings LLC v. S.A. Mins. Ltd. P'ship*,
    No. 12 Civ. 8087(CM), 2013 WL 324061 (S.D.N.Y. Jan. 24, 2013)........................................7

*Food Lion, Inc. v. United Food & Com. Workers Int'l Union, AFL-CIO-CLC*,
    103 F.3d 1007 (D.C. Cir. 1997) ...............................................................................................6

*NLRB v. Blevins Popcorn Co.*,
    659 F.2d 1173 (D.C. Cir. 1981) ...............................................................................................6

*Sistem Mühendislik Insaat Sanayi Ve Ticaret, A.Ş. v. Kyrgyz Republic*,
    624 F. Supp. 3d 432 (S.D.N.Y. 2022).......................................................................................7

**PRELIMINARY STATEMENT**

On November 8 and 24, 2021, this Court entered a $1.5 million sanctions judgment against Romania (collectively, the "First Sanctions Judgment") for its continued contempt of a discovery order requiring it to respond to Petitioners' post-judgment interrogatories (the "Interrogatories"). ECF Nos. 174, 176.  Romania appealed the First Sanctions Judgment, and the D.C. Circuit Court of Appeals (the "DC Circuit") affirmed the judgment on February 21, 2023.  ECF No. 206.

On November 7, 2024, this Court entered a $13.7 million sanctions judgment against Romania (the "Second Sanctions Judgment") for that same continued contempt.  ECF No. 231.

Petitioners now respectfully request a third sanctions judgment because Romania has produced no new discovery since its October 2023 responses (which pre-dated the Second Sanctions Judgment and were held to be inadequate), and has remained in staunch defiance of this Court's discovery orders and its obligations thereunder.  In light of Romania's continued failure to comply with this Court's discovery orders and provide complete answers to the Interrogatories, Petitioners request entry of a third judgment on the sanctions that have accrued against Romania.

**BACKGROUND**

On September 11 and 20, 2019, this Court confirmed an arbitration award rendered for Petitioners against Romania and entered judgment in the amount of $356,439,727 (the "Judgment").  ECF Nos. 86, 88.  Petitioners' efforts to enforce the Judgment have been met with Romania's dilatory tactics at every turn, including with respect to Petitioners' efforts to seek post-judgment discovery.

On October 1, 2019, Petitioners served the Interrogatories on Romania, seeking information concerning Romania's assets worldwide to aid in enforcement of the Judgment.  ECF No. 98-3.  Romania refused to answer them and on March 11, 2020, the Court granted Petitioners'

1

motion to compel and ordered Romania to respond to the Interrogatories (the "Discovery Order"). ECF No. 133.  Instead of responding, Romania filed a motion for relief from the Judgment ("First Motion for Relief"), and Petitioners moved for a contempt order.  ECF Nos. 138, 151.  On November 20, 2020, the Court denied Romania's motion, granted Petitioners' motion and ordered Romania to answer the Interrogatories within 14 days, or else sanctions payable to Petitioners would accrue against Romania at the rate "of $25,000 per week, which shall double every four weeks reaching a maximum of $100,000 per week, until such time as Romania complies with the March 11, 2020 Order."  ECF No. 159 (the "Contempt Order") at 16.  Romania appealed, and the DC Circuit affirmed the Contempt Order in all respects.  *See* ECF No. 198-1 at 2 (rejecting Romania's argument that it was justified in disobeying the district court's Discovery Order and finding that the Contempt Order was not an abuse of discretion).

In the four months following the Contempt Order, Romania provided five sets of responses (the "Responses"), all of which failed to answer the Interrogatories.  *See* ECF No. 167-2 ¶¶ 11, 14–28; *see also* ECF No. 174 at 5 ("Though Romania has answered some of Petitioners' interrogatories, its overall efforts have fallen short in multiple, material respects.").  Accordingly, on November 8 and 24, 2021, the Court entered the First Sanctions Judgment, on the sanctions that had accrued against Romania as of August 2, 2021, in the amount of $1,500,000.[1]  ECF Nos. 174 at 8, 176.

Instead of complying with its discovery obligations and paying the First Sanctions Judgment, Romania continued to re-litigate rejected arguments before both this Court and the DC Circuit.  On December 6, 2021, Romania appealed the First Sanctions Judgment.  ECF No. 177.

---

[1] This amount represented approximately half of the sanctions that had accrued against Romania pursuant to the Contempt Order ($2,900,000), in recognition of Romania's "partial compliance." ECF No. 174 at 8.

And, on March 29, 2022, Romania filed a second motion for relief from this Court's Judgment, the Contempt Order, and the First Sanctions Judgment ("Second Motion for Relief").  ECF No. 181.[2]  On December 22, 2022, the Court denied Romania's Second Motion for Relief (ECF No. 203), and, on January 19, 2023,  Romania appealed that too.  ECF No. 204.

On February 21, 2023, the DC Circuit affirmed the First Sanctions Judgment in full, finding that the "[t]he district court did not err in its factual finding that Romania's interrogatory answers were materially unresponsive," "did not abuse its discretion in assessing sanctions," and that it retained jurisdiction to enter the First Sanctions Judgment while the Contempt Order was on appeal.  ECF No. 206 at 3–4.  Specifically, the DC Circuit affirmed this Court's finding that "Romania's answers were 'incomplete in critical ways that would enable Petitioners to enforce the judgment'" because, for example, "Romania did not (i) identify any bank account information or deny the existence of such accounts; (ii) identify any tangible assets in the United States or deny owning such assets; or (iii) provide a complete list of assets held worldwide."  *Id.* at 4.  The DC Circuit also noted that "nothing in law or logic entitled Romania to yet another round of motions and orders to compel," given that Romania "had already been held in contempt, given purgation conditions, and warned of the consequences of noncompliance," and "[b]ecause Romania cannot plausibly claim that it lacked sufficient notice of its obligation to fully answer the interrogatories . . . the district court did not err in imposing sanctions on Romania."  *Id.*

Notwithstanding, Romania remained intransigent, refusing both to pay the First Sanctions Judgment and to provide the discovery the Court ordered it to produce.  Between April and May

---

[2] Romania also attempted to belatedly seek relief before a tribunal appointed by the International Centre for Settlement of Investment Disputes ("ICSID").  On February 18, 2022, Romania filed an application for interpretation of the award that is the basis for the Judgment by an ICSID tribunal under Article 50 of the ICSID Convention.  *See* ECF No. 181-6.  That application was rejected, by the ICSID tribunal hearing it, in December 2023.

of 2023, the parties exchanged email communications regarding Romania's non-compliant discovery Responses to date, and Romania's counsel indicated in a status update to the Court that he was "preparing a document that hopefully can be used to identify and clarify a roadmap and/or objective" regarding the "priority of information and main objectives of requests" in Petitioners' Interrogatories.  See ECF No. 224-2 ¶¶ 12–13, Ex. 1; ECF No. 209 ¶ 4.  To date, Romania has not provided this document.  Accordingly, on May 26, 2023, Petitioners moved for a second judgment on the additional sanctions that had accrued since August 2, 2021, which was the end date for the sanctions calculations in the First Sanctions Judgment.  ECF No. 210.

On October 31, 2023, Romania served its fifth amended response to Petitioners' Interrogatories—Romania's first responses since March 29, 2021.  ECF No. 224-2 ¶ 17, Ex. 3; see ECF 167- 2 ¶ 21, Ex. 8.  Those responses, however, were woefully deficient, and Petitioners sent Romania a fourth deficiency letter on March 25, 2024.  ECF No. 224-2 ¶ 20, Ex. 4.  Despite Romania representing to this Court that it intended to respond to Petitioners' fourth deficiency letter and this Court instructing Romania to do so "in due course," Romania never responded.  ECF Nos. 220 ¶ 3, 223 at 14:7-18.

On May 14, 2024, the DC Circuit affirmed in full this Court's denial of Romania's Second Motion for Relief.  ECF No. 219-1.

On July 17, 2024, the case was referred to mediation before Magistrate Judge Harvey.  ECF No. 221.

On August 2, 2024, Petitioners filed a supplemental motion for a second judgment on accrued sanctions, to update the sanctions amount that had accrued since August 2, 2021.  ECF No. 224.

On October 16, 2024, Magistrate Judge Harvey held a settlement conference for the parties. No settlement, or other resolution, was reached.  ECF No. 228.

On October 25, 2024, Romania represented to this Court in a status update that it was "willing to provide information to Petitioners on a rolling basis (as and when it is received), and regularly provide updates relating to same."  ECF No. 230 at 4.  However, Romania has not provided such information or updates to date.

On November 7, 2024, this Court entered the Second Sanctions Judgment, awarding Petitioners $13.7 million in sanctions for the period between August 2, 2021 and August 23, 2024.[3] ECF No. 231.   The Court determined that the "purgation conditions remain unfulfilled," specifically noting, among other things, that (a) Romania did not contend that its Fifth Amended Response satisfied its outstanding discovery obligations, (b) Romania never responded to Petitioners' March 25, 2024 deficiency letter, (c) while Romania could have sought guidance from the Court if, as it claimed, it was unsure how to purge itself of contempt, it had never done so and (d) "the [I]nterrogatories remain unanswered fully and completely, making additional sanctions appropriate."  *Id*. at 2-3.

Since the Second Sanctions Judgment, the situation remains unchanged.  Declaration of Anthony B. Ullman. Dated September 12, 2025 ("Ullman. Decl.") ¶ 16.  Romania still has not responded to Petitioners' March 25, 2024 deficiency letter; it has not requested any guidance from the Court as to how to purge its contempt; and, the interrogatories continue to "remain unanswered fully and completely" (ECF No. 231 at 33)—thus making an award of additional accrued sanctions again appropriate.

---

[3] The Court declined to award sanctions that accrued in the 22 weeks between when Romania sent its fifth amended set of Responses and one week after Petitioners sent their fourth deficiency letter, *i.e*., from October 31, 2023 to April 1, 2024.

## ARGUMENT

**I.    Romania Has Not Produced Any Additional Post-Judgment Discovery and the Court Should Enter Judgment on the Amount of Sanctions that Have Accrued From August 23, 2024 To Date**

Civil contempt "is a remedial sanction used to obtain compliance with a court order or to compensate for damage sustained as a result of noncompliance." *NLRB v. Blevins Popcorn Co.*, 659 F.2d 1173, 1184 (D.C. Cir. 1981). There are three stages of civil contempt proceedings: (1) "issuance of an order," (2) after disobedience of that order, "issuance of a conditional order finding the recalcitrant party in contempt and threatening to impose a specified penalty unless the recalcitrant party purges itself of contempt by complying with prescribed purgation conditions," and (3) "exaction of the threatened penalty if the purgation conditions are not fulfilled." *Id.* During the third "exaction" stage, a court "determines whether the party has fulfilled the purgation conditions," thereby "escap[ing] the threatened penalty" or, if the party failed to do so, such that "the penalty is imposed." *Id.* at 1185. Because civil contempt is a remedial sanction, "the intent of the recalcitrant party is irrelevant." *Food Lion, Inc. v. United Food & Com. Workers Int'l Union, AFL-CIO-CLC*, 103 F.3d 1007, 1016 (D.C. Cir. 1997).

Where a contemnor raises a defense for its failure to comply, it has the burden of showing "good faith and substantial compliance," demonstrating that it "took all reasonable steps within its power to comply with the court's order." *Food Lion.* 103 F.3d at 1017. "[G]ood faith is not entirely irrelevant to the ultimate determination of contempt." *Id.* While a showing of good faith "may be considered in mitigation of damages, good faith alone is not sufficient to excuse contempt." *Id.* at 1017-18. Exaction of contempt sanctions is warranted where the court finds by clear and convincing evidence that a contemnor has failed to satisfy the purgation conditions of a contempt order. *Blevins*, 659 F.2d at 1186.

6

When the contemnor remains non-compliant, the entry of interim orders on accrued sanctions is warranted. *See Sistem Mühendislik Insaat Sanayi Ve Ticaret, A.Ş. v. Kyrgyz Republic*, 624 F. Supp. 3d 432, 435 (S.D.N.Y. 2022), *R. & R. adopted*, No. 12-CV-4502 (ALC), 2022 WL 5246422 (S.D.N.Y. Oct. 6, 2022) (entering second interim judgment for $8.56 million against Kyrgyzstan who, since entry of first interim judgment, "ha[d] done nothing to purge its contempt or pay any of the judgments issued in Sistem's favor"); *CE Int'l Res. Holdings LLC v. S.A. Mins. Ltd. P'ship*, No. 12 Civ. 8087(CM), 2013 WL 324061, at *3 (S.D.N.Y. Jan. 24, 2013) (noting that judgment may be entered "from time to time for the accrued amounts of [contempt] fines").

This Court has already found that Romania's Responses failed to satisfy the Contempt Order's purgation conditions and entered both the First Sanctions Judgment, which the DC Circuit affirmed, and the Second Sanctions Judgment. ECF Nos. 174 at 5–6; 206; 231 at 2. In the Second Sanctions Judgment, the Court expressly warned Romania that additional sanctions might be imposed if it "continue[d] to remain non-compliant with the court's order." ECF No. 231 at 4–5. That is exactly what Romania has done: consistent with its past conduct, Romania has made no attempt whatsoever to supplement its insufficient Responses, has not paid the remaining amount owed on the Judgment, and has not paid any amounts owed on the First Sanctions Judgment and the Second Sanctions Judgment.

In the First Sanctions Judgment, the Court entered approximately half of the sanctions that had accrued in recognition of Romania's "partial compliance," as reflected in the Responses it provided in early 2021. ECF No. 174 at 8. In the Second Sanctions Judgment, the Court awarded nearly all of the sanctions requested, save only for those accruing during an approximately 22-week period in which Petitioners had not yet responded to Romania's Fifth Amended Response. ECF No. 231, at 4. Since the Second Sanctions Judgment, Romania has not produced **any**

7

additional discovery, and there has been no delay by Petitioners in responding to any proffers of discovery by Romania (none were made). As a contemnor, the burden is on Romania to purge its contempt. *Id.* at 2 ("The burden is on Romania to purge itself of contempt, not Petitioners to continue to insist on compliance."). True to form, Romania has done nothing. *See supra* at 5; Ullman. Decl. ¶ 16.

Romania's ongoing and complete failure to provide the required discovery—indeed, any of it—following the Second Sanctions Judgment clearly evinces Romania's utter and deliberate disregard for its obligations and this Court's authority. Given Romania's failure to purge its contempt, which has now been continuing for **more than four years**, the Court should enter the full amount of sanctions that have continued to accrue against Romania since August 23, 2024, which amount to $5.8 million as of October 3, 2025 (the anticipated date by which briefing on this motion will conclude). *See* Ullman Decl. ¶ 17.

## CONCLUSION

For the foregoing reasons, Petitioners respectfully request that this Court enter judgment in the amount of $5.8 million as of October 3, 2025, to be supplemented at the time judgment is entered. Petitioners reserve the right to seek additional judgments on the sanctions that will continue to accrue against Romania as long as it remains in noncompliance with the Court's orders.

Dated: September 12, 2025
    Washington, D.C.

8

By: */s/ Francis A. Vasquez, Jr.*
Francis A. Vasquez, Jr. [Bar # 442161]
F.A. VASQUEZ CONSULTING
2109 Arrowleaf Drive
Vienna, VA 22182
Telephone: (571) 363-7747
frank@favasquez.com

By: */s/ Hansel T. Pham*
Hansel T. Pham [Bar # 489203]
WHITE & CASE LLP
701 Thirteenth Street, N.W.
Washington, DC 20005
Telephone: (202) 626-3600
hpham@whitecase.com

By: */s/ Jacqueline L. Chung*
Jacqueline L. Chung [Bar # NY0581]
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
jacqueline.chung@whitecase.com

*Counsel for Petitioners Ioan Micula, S.C.
European Food S.A., S.C. Starmill S.R.L.,
and S.C. Multipack S.R.L.*

By: */s/ Anthony B. Ullman*
Drew Marrocco [Bar # 453205]
Catharine Luo [Bar # 1697958]
DENTONS US LLP
1900 K Street, NW
Washington, DC 20006
Telephone: (202) 496-7500
Facsimile: (202) 408-6399
drew.marrocco@dentons.com
catharine.luo@dentons.com

-and-

Anthony B. Ullman (admitted *pro hac vice*)
John J. Hay (admitted *pro hac vice*)
DENTONS US LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 768-6800
anthony.ullman@dentons.com
john.hay@dentons.com

*Counsel for Petitioner Viorel Micula*

9